UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

UNITED STATES OF AMERICA      )
                                          )
V.                                    )         No. 2:07-CR-13
                                          )
FAKHRADEEN KHALLID KNIGHT      )

**<u>MEMORANDUM</u>**

Pursuant to the motion of the United States that the defendant be detained as a risk of flight and - far more critically - a danger to others, a detention hearing was held on March 30, 2007. A supplemental hearing was held on April 10, 2007. Because of the seriousness of the matter, the relatively extraordinary step of filing this memorandum opinion is deemed necessary. Although the Indictment charges defendant with numerous offenses, they all boil down to counterfeiting. Thus, no presumption, rebuttable or otherwise, is applicable regarding defendant's potential pretrial release. If the defendant is to be detained, it will be on the basis of 18 U.S.C. § 3142(f)(2): that he is either a serious risk of flight or that he poses a serious risk to obstruct justice, or threaten or intimidate potential witnesses. The burden is upon the United States to prove, by a preponderance of the evidence, that there is no condition or combination of conditions that will reasonably assure defendant's appearance, and the burden is upon the United States to prove, *by clear and convincing evidence*, that there is no condition or combination of conditions that will reasonably assure the safety of any other person. 18 U.S.C. § 3142(f)(2).

Subsequent to the first portion of the detention hearing held on March 30, 2007, Probation Officer Myres submitted a memorandum in which he recommended that defendant be detained on the basis that he poses a risk of danger to the community. In this regard, Officer Myres noted that defendant's criminal history revealed "violent tendencies," manifested by assaulting police officers,

aggravated assault/battery charges, aggravated battery on a pregnant woman, and of course the pending second degree murder charge in Chattanooga.

As just noted, defendant currently is charged in Hamilton County Tennessee with second degree murder. Two of the co-defendants, Jerri Rader and Genise Knight (no relation to this defendant) were witnesses to that homicide, at least to some extent. Before defendant's initial appearance in this court, these co-defendants testified in their own detention hearings that they were afraid of defendant. Similarly, Sharon Rader, mother of Jerri Rader, testified in prior hearings involving her daughter that she was fearful of this defendant. She also mentioned efforts that defendant, or members of his family, had made to contact Jerri Rader.

When there are allegations by witnesses or any other person that a defendant has manifested threatening or intimidating behavior, the attention of this magistrate judge is promptly seized. When the United States asks for detention based upon threats or danger, the court's concern is ratcheted up a notch. And when that defendant is charged with a homicide, the concern increases exponentially.

Based upon the allegations made during the course of other hearings regarding this defendant, the detention hearing on March 30, 2007, did not meet the expectations of this magistrate judge. The first witness was Bob Ellis, a detective with the Morristown Police Department. The defendants Jerri Rader and Genise Knight were confined in the Hamblen County Jail from September to December 2006. Detective Ellis testified that these two defendants received letters from Tahira Knight of Miami, Florida, who is defendant's sister. Those letters were intercepted by the jailers at the Hamblen County Jail and they were filed as exhibits to the detention hearing. Those letters contained no threats of any kind; indeed, Tahira Knight simply urged Genise Knight and Jerri Rader to "tell exactly" what happened in Chattanooga. In short, there is nothing in these

letters that can remotely be construed as threatening or intimidating. Detective Ellis further testified

that there has been telephonic contact from "other members" of defendant's family with one or both

of these women while incarcerated in the Hamblen County Jail; however, there was no testimony

regarding the content of these telephone conversations and thus no evidence from which this court

could infer that the calls were intended to threaten either of these women.

Sharon Rader, Jerri Rader's mother, was the next witness. She acknowledged that her

daughter was a witness to the Chattanooga homicide, and that defendant's father, Ronald Knight, told

her that he had visited Jerri Rader in the Hamblen County Jail because he "wanted to help her." Ron

Knight also called Jerri Rader's home after Jerri's release from jail, which would have been after her

initial appearance in this court. Sharon Rader testified that her daughter did not talk to Ron Knight

because she had been ordered by this court not to talk to this defendant or any of his family members.

Sharon Rader further testified that defendant himself called from jail, identifying himself as "Bobby,"

stating that he had a message for Jerri "from Mohammed." Jerri did not talk to him. Ultimately,

AUSA Harr asked Ms. Rader if she was afraid of this defendant. Although the transcript of the

testimony will not reveal it, there was an extremely long pause before Ms. Rader answered anything

at all. She testified that "*Jerri* is afraid." She went on to testify that she wants "no contact" with

this defendant. She subsequently testified that defendant has not contacted them but the family (Mr.

Ron Knight?) has done so for the purpose of securing testimony on defendant's behalf with regard

to the homicide charges in Chattanooga. Ms. Rader was asked if she believed that defendant was

trying to suborn perjury, to which Ms. Rader answered, "possibly."

On cross examination, Ms. Rader acknowledged that her daughter likely will be a witness *for*

*defendant* in the homicide case, and she has been told that the homicide case against defendant is not

very strong. She went on to testify that she is friends with Mr. Ron Knight, and that she had

contacted him on occasion, and that neither he nor the defendant has ever threatened her.

The last witness was Special Agent Doug Allen of the Secret Service. Stating that defendant had made numerous phone calls from the Greene County Jail, Agent Allen obtained digital copies of the recordings made of those phone calls. The only co-defendant mentioned in those phone calls was Valenzia Gudger; Jerri Rader and Genise Knight were never mentioned. With respect to Gudger, neither the defendant nor any of the other parties to the phone conversations made any statements that could be construed as threatening or a desire to suborn perjury.

Special Agent Allen was asked if any of the co-defendants or their families were fearful "of being contacted" by defendant or his family, to which Agent Allen responded in the affirmative, specifically mentioning Sharon Rader, mother of the defendant, Jerri Rader. He was then asked if Jerri Rader and Genise Knight were fearful of defendant, prompting Agent Allen to answer, "I believe they are."

The detention hearing was resumed on April 10, 2007. Prior to that hearing, the magistrate judge received multiple written communications, all of which emanated from Reverend Burke, a Methodist minister in Miami, Florida. These communications never should have been sent to the magistrate judge, and those communications should not have been read in the first instance. However, they were read through inadvertence, and that simply cannot be done. However, those communications were filed as exhibits to the April 10 hearing and copies furnished to AUSA Harr and defense attorney Baird. Defendant was advised in the sternest language possible that he should instruct *everyone* to send no further communications to either the magistrate judge or the district judge regarding this case, at least until the sentencing phase of the case, if it gets to that point.

With respect to the testimony at the April 10 hearing, Agent Allen testified that defendant's employment history revealed that his employment was sporadic.

4

The three co-defendants have been released on conditions.  Defendant is charged here only with counterfeiting and offenses relating to counterfeiting.  He poses a risk of flight, but so does practically every defendant before this court.  The issue, as always, is whether there are conditions which can lessen that risk to acceptable levels.  He has family and friends in Miami, and it is noted that the magistrate judge in Miami earlier required a $100,000.00 corporate surety bond as one of the conditions of the defendant's pretrial release in Florida.  In light of what this magistrate judge has heard, and not heard, that condition was and remains an appropriate one.

As far as a danger to the community or others is concerned, the United States has failed to prove by a preponderance of the evidence, much less by clear and convincing evidence, that there is no condition or combination of conditions that will reasonably assure the safety of any other person.  The court is all too aware that the United States alleges that defendant poses a risk to these co-defendants, and this magistrate judge has no intention of gambling with the safety and welfare of any other person.  But when all is said and done, this case must be decided on the basis of the evidence, and there is simply no evidence that even begins to justify defendant's pretrial detention.  The court has more than sufficient reason to doubt that any of the co-defendants truly are fearful of defendant or his family.  Protestations of fear notwithstanding, the defendants Gudger and Rader both have professed in the past to be madly in love with defendant.

Defendant will be released on conditions which will be memorialized in the standard form order.


                                                    s/Dennis H. Inman
                                                    United States Magistrate Judge